PRISCILLA D. BUCKHOLTS, plaintiff in error, vs. PETER BUCK-
HOLTS, defendant in error.

[1.] The divorce law of 1850, not being retroactive, acts of cruel treatment, done before its passage, cannot be grounds of divorce under the law.

[2.] If, after an act of cruelty done by the husband to the wife, she lives with him for many years, and has by him numerous children, and would probably still live with him, but for the interference of a child, the act is condoned by her.

[3.] A total divorce will not be granted on evidence consisting, *exclusively*, in confessions of the defendant.

Divorce, from Dooly.   Tried before Judge POWERS, April Term, 1857.   Motion for new trial granted Oct. Term, 1857

Priscilla D. Buckholts filed her petition against Peter Buckholts, her husband, praying for a divorce *a vinculo matrimonii.*

The petition states, that libelant was married to respondent in the year 1824, and from that time until within a recent period, they had lived together as man and wife, and had raised a large family of children—ten in number.   That she had ever been a faithful, dutiful, and affectionate wife, but that for many years past, her husband had treated her with great cruelty and indignity, inflicting upon her inhuman and degrading beatings, and often threatening to kill her, whereby, she was put in great fear of life and limb, &c. That finally defendant, after beating petitioner, drove her from his house, and refused to allow her to remain and live with her children, and she was compelled to seek and find a home at her father's, in a distant county.   That six of their children are minors and living with their father who, by reason of his habits and temperament, is unfit to rear and educate them.

By an amendment to her petition, libelant charges her husband with living in a state of incestuous adultery with his own sister.

Defendant pleaded, first, the general issue, denying the cruel treatment; second, condonation ; third, that libelant's own turbulent temper and violent conduct had caused and rendered necessary the harsh treatment of which she complained

The jury found the following verdict :

"We the jury find that sufficient proofs have been referred to our consideration to authorize a total divorce; that is to say, a divorce *a vinculo matrimonii* upon legal princi-

ples between the parties in this case; and we further set apart to Peter Buckholts, five thousand dollars out of the property, to be estimated and raised according to the order of the Court, and the balance of the property to the children of said parties."

Whereupon, counsel for respondent, Peter Buckholts, moved for a new trial, on the following grounds:

1st. Because said verdict is contrary to law and evidence.

2d. Because the verdict is decidedly and strongly against the weight of evidence.

3d. Because the distribution of the property is inequitable and unjust to defendant; the income and interest of five thousand dollars not being sufficient to maintain and support him at his advanced age of life, and said verdict makes no provision for the payment of his debts.

4th. Because the section of the Act which provides for and authorizes the distribution of defendant's estate, as made or proposed in said verdict, is contrary to the Constitution of the United States and the State of Georgia, in, that it takes private property without the consent of the owner and vests it in others, and inflicts a heavy forfeiture and penalty upon a citizen charged with, or convicted of, no crime or offense against the penal laws of the State.

5th. Because no act of cruelty on the part of defendant was proved which had not been condoned or forgiven; the last act proven having occurred nearly a year before the separation between the parties.

6th. Because the verdict is contrary to the charge of the Court, in this, that the Court charged that it was not every slight disagreement or fight between the parties, that will authorize a divorce.

7th. Because it was an abuse of the discretion vested in the jury to grant a total divorce, under the facts and circumstances of this case.

8th. Because, from the evidence, it appears that one of the children, William Buckholts, had an active agency in pre-

venting a reconciliation between the parties, and this fact should have operated as a bar to a total divorce, and should have increased the allowance made to defendant, out of his property.

9th. Because the articles of separation between the parties were a bar to a partial divorce even.

After argument, the presiding Judge set aside the verdict and ordered a new trial upon the grounds above stated.

Whereupon, counsel for libelant excepted.

WARREN & HUMPHRIES, represented by KILLEN & STUBBS, for plaintiff in error.

SAM. HALL; and JNO. M. GILES, *contra*.

*By the Court.*—BENNING, J. delivering the opinion.

The libel is put upon two grounds; cruel treatment, and incest.

In support of the last ground, no proof whatever, was offered.

The verdict was for the plaintiff, granting a total divorce, and disposing of the whole of the defendant's property, which was quite large.

The motion for a new trial was put on a number of grounds, and the judgment granting the motion, was itself put on all of those grounds.

The exception is to this judgment.

The judgment was right, if any of the grounds of the motion was good. The question, therefore is, were the grounds of the motion, or any of them, good?

The first ground was, that the verdict was contrary to law and evidence; the second, that it was decidedly and strongly against the weight of the evidence. These two may be treated as but one.

There being no evidence, as to incest, the verdict may be considered as saying, that there was cruel treatment.

Does the evidence show, that there was cruel treatment? This then, is the question.

The evidence shows, that in 1828, the husband whipped the wife " with a cowhide without any provocation, only that she had invited several ladies to help her quilt the next day."

The evidence shows, that the husband confessed, that, eighteen or twenty years before the time of the taking of the evidence, " he kicked plaintiff on the jaw, and broke her jawbone."

A witness testified; that " at a church trial, some time in 1851 or 1852, when the dispute between plaintiff and defendant was investigated, defendant admitted before the church, that a short time before then, he had struck plaintiff, two or three licks with a negro whip, but he did not hurt her.  He might have hurt her, if he had not been prevented.  He complained of plaintiff's tongue, and said, she had told false things on him, but did not specify what. . He said, he could not forgive her, or could not love her.  From what witness understood, he wanted plaintiff to give a libel," [lie-bill ?] " and refused to live with her unless she did.  Plaintiff asked the church to forgive her, and begged defendant to forgive her, and let her live with him.  The church expelled defendant."   " Plaintiff afterwards lived with defendant for some time."

A winess says that he " heard plaintiff talking to his, witness's wife, after the church trial, and about a year before the separation.  She was asked in relation to a rumor, that defendant had beaten her cruelly.  She said it was not true : that he had hit her two or three licks with a whip, but had not hurt her.  She said, the reports in circulation in regard to defendant's cruel treatment, were false.  She, plaintiff, has been to the house of defendant, and staid all night there, since the suit was commenced."

The evidence shows, at the instance of mutual friends of the parties, overtures of reconciliation and re-cohabitation,

Buckholts vs. Buckholts.

were made by him to her, and that she, though seemingly inclined to accept them, had finally rejected them, being persuaded to do so, by one of the children, Wm. Buckholts, who, in his unfilial selfishness, " insisted, that the property should be settled on the children then, before he would agree for his mother to return."

The evidence shows, that there was a contract of separation, between the parties.

This is about the substance, of what the evidence shows. And is there in this any cruel treatment shown ?

The acts shown in this, which are susceptible of being denominated acts of cruel treatment, are three—the whipping with the cowhide, the kick on the jaw, the licks with the negro whip.

The first of these acts, happened in 1828, twenty-seven years before the commencement of the suit, and twenty-two years before the existence of the law making cruel treatment, a contingent ground of total divorce.  *Cobb Dig.* 226.

[1.] This law is not retroactive.  Therefore, it could impart no divorce-supporting qualities to the cowhiding act, which that act did not possess before ; and before, it possessed none, so far as a total divorce is concerned.

She continued to live with him after this act until 1852, and, while so living with him, she had by him a number of children.   In 1852, (the time of the " church trial,") she wished still to live with him; she " begged" him, " to let her live with him."   She even now, perhaps, would live with him, but for her son's objection.

[2.] This was *condonation* of the cowhiding.  " When one of the married parties, knows the other to have committed a breach of matrimonial duty, yet continues or renews the cohabitation, the law presumes the offence is condoned." *Bish. Mar. and Div. sec's.* 357, 369.

This act of cowhiding could avail nothing, then, in making out the charge of cruel treatment.

[3.] The same things may be said of the second act of cruelty—the kick on the jaw; and also, this in addition, that the evidence in support of that act consists, exclusively, in the confessions of the defendant. And the law is, that when the evidence consists *exclusively* in such confessions, a total divorce will not be granted. *Bish. Mar. and Div. sec's* 501, 305.

There remains but the act of striking the licks with the negro whip, in 1852.

1. This act depends for its proof, exclusively, on the *confessions* of the parties.

2. It may be doubted, whether it was an act of *cruelty;* she said, the licks did not " hurt her ;" she said, " the reports in circulation, in regard to defendant's cruel treatment, were false." She lived with him for a year after the act, and " begged" him " to let her" continue to " live with him ;" which shows she had no *fear* of him. And may we not lay it down for law, that to make out a case of cruelty, " there must be either actual violence committed, attended with danger to life, limb or health, or there must be a reasonable apprehension of such violence. *Bish. Mar. and Div. sec.* 454, *note* 1.

3. There is enough in the evidence, to raise a suspicion, that she was not blameless. He complained of her " tongue," " said, she had told false things on him, but did not specify what." In her libel she charged him with *incest ;* she offered no proof in support of the charge.

At the " church trial," she " asked the church to forgive her, and begged defendant to forgive her and let her live with him.' *Bish. Mar. and Div. sec.* 491.

4. She *condoned* the act. She lived with him a year afterwards, She " begged" him to let her live with him longer. It is probable, she would live with him now, if her son would consent to it. She has slept at his house, even since the separation. And the condonation of this, the last act, prevented the revival of the two former acts, supposing that they were acts susceptible of revival.

Upon the whole, we think, that this third act was not sufficient to entitle the plaintiff to a total divorce.

The result must therefore, be, that, in our opinion, the verdict was contrary to the evidence; and consequently, that the two first grounds of the motion, were good. This makes it necessary, to affirm the judgment.

A word only, on some of the other grounds.

We cannot say, the we think the fourth ground good; or the ninth. It is needless to express an opinion on the rest. Indeed, they, for the most part, are involved in the first two grounds, which have already been considered.

Judgment affirmed.