ELIZABETH A. DUNN, PLAINTIFF IN ERROR, v. SAMUEL S. DUNN, DEFENDANT IN ERROR.

[FILED MAY 2, 1889.]

1. **Divorce**: ABANDONMENT: EVIDENCE. An action for a legal separation on the ground of abandonment brought by the wife against her husband cannot be maintained where the uncontradicted testimony shows that about the time the action was instituted the plaintiff and defendant had freely cohabited together as husband and wife.

2. ———: COHABITATION: CONDONATION. Where the wife, in a cross-bill was charged by the husband with certain acts of cruelty committed against him, and it appeared that after such alleged acts he freely cohabited with the plaintiff as his wife, he will be held to have condoned the offenses.

3. ———.    The marriage relation is designed to continue so long as both the parties entering into it shall live; and the relation will not be dissolved except for adequate legal cause.

ERROR to the district court for Clay county.    Tried below before MORRIS, J.

*Dilworth, Smith & Dilworth,* for plaintiff in error.

*L. G. Hurd,* and *Thomas Ryan,* for defendant in error.

MAXWELL, J.

This action was brought by the plaintiff against the defendant for a decree of separation and alimony, on the ground of abandonment.

The defendant answered the plaintiff's petition, in effect denying all the allegations contained therein, except the marriage of the parties.    He also filed a cross-petition on the ground of cruelty.

The plaintiff, in answer to the cross-petition, pleaded condonation.    On the trial of the cause the court found that there had been no abandonment of the plaintiff by the defendant, and dismissed the plaintiff's petition.    The court found the facts stated in the defendant's cross-petition to be true, and rendered a decree of divorce thereon, with $1,000 alimony to the plaintiff.

The testimony shows that the marriage took place on the 2d day of February, 1879, at Thompson, Illinois, and that the parties continued to live together as husband and wife until the 20th of August, 1880; that prior to the marriage the plaintiff was conducting a millinery store at Thompson, Illinois, and was possessed of property of the value of from $4,000 to $6,000.    So far as this record discloses, she was industrious and economical, with considerable business ability.    The defendant, at the time of the marriage, had children by a former wife, living at Thompson, and pos-

sessed two farms near that place, which were quite valuable, although somewhat incumbered with liens.

The exact cause of the disagreement between the parties does not appear. The defendant claims that the plaintiff has a high temper, which at times she does not control; while she claims that the defendant, while of sufficient ability, failed to provide a suitable support for her, and there is testimony tending to sustain both charges. On the 20th of August, 1880, the parties had some difficulty, and the defendant claims that the plaintiff ordered him to leave the house, and that in compliance therewith, he did so leave, and has remained away ever since. The evidence seems to be sufficient to sustain the plaintiff's charge of abandonment, and unless the testimony shows cohabitation of the parties since that time, she will be entitled to a decree as prayed. The date when the original petition was filed does not appear, but an amended petition was filed in 1882, and a motion made by the defendant to strike that petition from the files, was overruled in May, 1883. The defendant thereupon, in May, 1883, filed his answer and cross-petition. The defendant, about the year 1880, removed to this state, and the next year his wife followed. He testifies on cross-examination:

Q. You say you have not lived with her, the plaintiff, since the time you claim she struck you with a hatchet?

A. Yes, sir; that is all I ever lived with her. In the latter part of May or June, 1881, I went east to Illinois, and when I came back, I found two or three letters here from my wife. She was down at Fairmont, and she wanted that I should take her down to Kansas, and I did so.

Q. That was in 1881?

A. Yes, sir.

Q. That was after the time she struck you with the hatchet?

A. Yes, sir.

Q. Where did you go on that trip?

A. In those letters she wanted me to take her down to Kansas, to her sons, and that is where we went.

Q. Did you stop at a hotel in Grafton on your way down?

A. No, sir, not on my way down.

Q. Did you stop at any hotel, or at any place, going down?

A. Not on the way down. When I went for her, I got her in the afternoon. It was between Grafton and Fairmont. I drove up to the house, and she came out; I told her I was going to Fairmont.

Q. Did you stop at any hotel going down?

A. Yes, sir.

Q. Did you stop at any hotel in Grafton?

A. Yes, sir.

Q. Did you stop at any hotel in Hebron going down?

A. Yes, sir.

Q. Did you have your wife with you at the time?

A. Yes, sir.

Q. Did you occupy the same room?

A. Yes, sir.

Q. At one or both of the places?

A. Yes, sir.

Q. Did you cohabit with the plaintiff at one or both of these places?

A. No, sir.

Q. Did you visit this plaintiff, in the year 1882, in a room in Sawtell's building?

A. Yes, sir.

Q. Did you or did you not cohabit with the plaintiff there?

A. No, sir, I did not.

Q. Did you visit the plaintiff at a room in Sawtell's building in this town, after you had filed your answer in this case?

A. Yes, sir; she met me on the street, and wanted I

should come up to her room, and said that she wanted to see me; and I went up there and commenced talking about our trouble, and I commenced talking about business and our trouble, and wanted to fix the matter up with her, and she flew off in one of her spells, or crazy spells, and commenced crying and bellowing as loud as a person could; and I got up and left.

Q. Did you or did you not cohabit with the plaintiff there?

A. No, sir, I did not.

### RE-DIRECT EXAMINATION.

Q. You may state under what circumstances she got into your buggy, on the occasion of your going to Kansas, as you were about to state them in your cross-examination.

A. I drove up to the house where she was, and she came out to the buggy, and I told her I was going to Fairmont, and if she wanted to go to Kansas, I would be back in the morning to take her down to Kansas, and she asked me if she could not take a ride with me, and I told her she could, and we got into the buggy and drove out around and back to the house for her to get out, and she would not get out of the buggy, and she said she was going wherever I went. I tried to prevail upon her to get out of the buggy, and she insisted that she wouldn't, that she was going wherever I went, and I was forced to go somewhere and so I drove to Grafton.

The letter of the defendant to the plaintiff referred to, is as follows:

"HARVARD, NEB., May 30, 1881.

"Mrs. E. A. Dunn, Fairmont: Do you want me to take you to Kansas? If so, let me know by return mail. All well.          Yours truly,          S. S. DUNN."

The plaintiff testifies that at the places where they stopped for the night, the defendant had sexual intercourse with her, and that he had such intercourse at various times afterwards

when he called to see her at her room.    The proof of cruelty upon the part of the plaintiff consists of two principal charges: first, that he woke up in the night and saw his wife flourishing a revolver near his bed; and second, that on the 20th of August, 1880, she struck him with the back of a hatchet.    For aught that appears, this blow may have been accidental; and the testimony as to the revolver is of a very unsatisfactory character, and is unequivocally denied by the plaintiff.    But even if acts of cruelty were committed against the defendant, he condoned the offense.    Condonation is a defense whether the cause of divorce is adultery, cruelty, or other ground.    (*Gardner v. Gardner*, 2 Gray, 434; *Sullivan v. Sullivan*, 34 Ind. 368; *Phillips v. Phillips*, 27 Wis. 252.)

Condonation may be inferred from cohabitation with knowledge of the offense, after the conduct complained of. (*Williamson v. Williamson*, 1 Johns. Ch. 488; *Wood v. Wood*, 2 Paige Ch. 108; *Bronson v. Bronson*, 7 Phila. 405; *Buckholts v. Buckholts*, 24 Ga. 238; *Twyman v. Twyman*, 27 Mo. 383; *Davies v. Davies*, 55 Barb. 130; 4 Am. and Eng. Encyc. of Law, 822.)    From cohabitation sexual intercourse, and from sexual intercourse forgiveness, is implied.    (*Burns v. Burns*, 60 Ind. 259; *Harper v. Harper*, 29 Mo. 301.)    In our view, therefore, the defendant condoned the plaintiff's alleged cruelty toward him, and as all the testimony shows that the parties cohabited as man and wife about the time this action was brought, the charge of abandonment for two years before the bringing of the action fails.

The marriage relation was instituted by the Creator, and it was designed that the parties who should take upon themselves the marriage vow should regard it as permanent so long as they both should live.    Our statute for certain causes authorizes a dissolution of the marriage relation; but mere rudeness of language, petulance of manners, austerity of temper, or even occasional sallies of passion, if they do not threaten personal violence, do not constitute legal cruelty.

(*Gleason v. Gleason,* 16 Neb. 16.)    It is evident that both the plaintiff and defendant in this case are respectable people, and if each will exercise a reasonable amount of forbearance toward the other, no sufficient reason is shown why they may not live together as husband and wife.    In any event, to entitle them to a divorce, sufficient cause must be shown; and as there is a failure in that regard, the judgment of the district court must be reversed and the cause dismissed.

REVERSED AND DISMISSED.

THE other Judges concur.