MARY BROZ, APPELLEE, V. FRANK BROZ, APPELLANT.

FILED DECEMBER 31, 1924.    NO. 22914.

1. **Divorce:** EXTREME CRUELTY. "There may be extreme cruelty justifying a decree of divorce without physical injury or violence. Unjustifiable conduct on the part of husband or wife, which utterly destroys the legitimate ends and objects of matrimony, may constitute extreme cruelty." *Bristol v. Bristol,* 107 Neb. 321.

2. ———: ALIMONY. Evidence examined, and *held* that the allowance of alimony to plaintiff is not excessive.

APPEAL from the district court for Saline county: RALPH D. BROWN, JUDGE. *Affirmed.*

*Grant G. Martin* and *Bartos & Bartos,* for appellant.

*Thomas J. Dredla* and *G. E. Hager, contra.*

Heard before LETTON, DEAN, GOOD and THOMPSON, JJ.

DEAN, J.

Mary Broz, plaintiff, sued for divorce in Saline county on the grounds of extreme cruelty, drunkenness, and profligacy. She also prayed for the custody and control of their two minor children, Leonard and Irene, now aged seven and five years, respectively, and for alimony and attorney fees. Plaintiff was awarded a divorce; the custody of the children; $25 a month in advance for maintenance of the children from May 1, 1922, until the further order of the court, and $4,000 alimony. Defendant appeals.

From the first year of their married life, and until some time before this suit was begun, the parties lived on a farm in Saline county. On plaintiff's part, the evidence discloses an appalling state of moral delinquency on defendant's part. According to his wife's, and other, evidence in the record, her husband's bestiality and the cruelties he practiced toward her are so revolting that they are quite beyond the bounds of decent expression in words. Hence, the major iniquities charged against defendant, as related by his wife, and other witnesses in her behalf, will not be recounted here.

Broz v. Broz.

Defendant seems to be possessed of an ungovernable and vicious temper. Plaintiff testified that he unmercifully beat and abused his livestock; that he killed one horse by sticking a pitchfork into its head and eyes; that he killed an old sow by beating her with a stick; another he viciously killed with a gun; that, when she remonstrated with him about his cruelty toward animals, he told her to shut up or she would get it, instead of the animals; that defendant was addicted to the intemperate use of intoxicating liquors; that after the Volstead act was adopted he had at one time two wagon loads of beer and other liquors in the cellar that he brought home in the nighttime; that he sold a cow for $75, that her parents gave her, and with the money he bought moonshine whiskey, and other brands of booze, and that, when he could not get liquors, he made "potato whiskey" in the kitchen; that, drunk or sober, he often called her the vilest name that can be applied to a virtuous woman; that he delighted in the use of vulgar and basely obscene language in the presence of her young brothers and a sister and other persons of tender age, and that he had a few vile letters and some indecent poetry, all in the record, that he frequently read to the young people and to entertain other of his friends when they called at their house; that he accused her of infidelity and of illicit conduct with the hired men and others; that, when she was taken to a hospital to undergo a serious operation, he accused her of remaining there longer than necessary that she might have improper relations with the doctors and attendants; that before her eldest child was a month old he said he would kill him if he looked like her people; that he often boasted of his conquests of "other women or girls in other towns. He always said he went after other girls," and that when she told him she would leave him if he continued his immoral practices, "he said I can do the same thing;" that defendant compelled her to work in the field and about the stable yard like a hired man, and to soak grain for the hogs and feed and take care of them, and milk the cows, besides doing her housework. Two young

.girls who helped with the housework, for brief but separate periods, testified that he made indecent proposals to them. One of the girls testified that he took her home one day, ·and that he told her "that I shouldn't say anything to my mother."

. Two hired men who worked for defendant on the farm were called in his behalf. They testified, in substance, that they never saw plaintiff doing any outside work on the farm, and another testified to the same effect, and added that he never saw defendant under the influence of liquor.

Defendant denied the truth of the statements of all the witnesses who testified against him. He further testified that, before the suit was begun, plaintiff condoned his acts of which she has made complaint.

Defendant's plea of condonation is not supported by the record. That plaintiff ever condoned his cruelties in the manner contended for by defendant is not established. On the contrary, his cruelties continued up to almost the very moment of her enforced separation from him. Defendant cites *Dunn v. Dunn*, 26 Neb. 136. But this case does not support his contention. In the *Dunn* case it was disclosed that, for some time before the action was commenced, plaintiff and defendant had freely cohabited together as husband and wife. But this fact does not appear in the present case, but, as above noted, his cruelties were continuous to the end.

Defendant also complains that the court allowed plaintiff excessive alimony. We do not think so. It was shown that $2,000 was given to plaintiff by her parents and this money was used to buy some of the land which is now defendant's property. Her parents also furnished the young people with a good deal of household goods and other property when they were married.

The evidence, in respect of defendant's financial worth, is conflicting. But it is sufficient to support the findings of the court, and the judgment will not therefore be disturbed. *Nathan v. Nathan*, 102 Neb. 59.

The judgment is

AFFIRMED.