HARRIS *v.* HARRIS.

4-7783                                          191 S. W. 2d 465

Opinion delivered January 7, 1946.

*John W. Nance* and *Vol T. Lindsey,* for appellant.

*Claude Duty* and *F. O. Butt,* for appellee.

SMITH, J. The parties to this litigation have each been married three times, and both have been twice divorced. They were married to each other December 7, 1937, and on August 22, 1944, appellee, the wife, filed this suit for divorce, and for division of property and for judgment based upon a loan and other transactions with appellant, her husband. There was a decree for divorce and judgment for certain debts, and a division of the husband's property was decreed pursuant to the provisions of § 4393, Pope's Digest, and from that decree is this appeal.

The complaint alleged indignities on the part of the husband, which rendered appellee's condition as his wife intolerable. An answer was filed denying all these allegations.

Much testimony was taken. Twenty witnesses testified on behalf of the wife, and sixteen others on behalf of the husband. A large part of the testimony is more or less trivial, relating to quarrels which apparently were soon forgotten. The testimony shows that appellee was addicted to strong drink, and this unquestionably was the cause of much of their trouble, but she testified that she had abandoned that habit, and did not now drink at all. Appellee amended her complaint to allege desertion, but the divorce was not granted on that account. The chancellor reviewed the testimony at great length in a written opinion, without referring to the alleged desertion. The testimony which the chancellor stated he believed to be

true, and which he found was such an indignity as to entitle appellee to a divorce, related to the paternity of her last child. As has been said, she was married twice before and she had one child by each husband.

The testimony concerning the paternity of the child was to this effect. Appellee testified that she received a letter from appellant in which he disclaimed the paternity. But she did not produce this letter. She testified that she was so ashamed and humiliated that she destroyed it. This, under ordinary circumstances, might not have been an unusual thing to do, but here the parties had discussed and were contemplating a divorce. They were living apart and, according to appellee's testimony, they remained apart for more than a year. But they corresponded and a number of letters from appellee are in the record. These letters are more or less facetious, but express affection and her willingness and desire to return to his home and resume the marital relation. In some of these letters appellee chided appellant about his conduct toward her, but in none of them is there an intimation that she had received the letter in question. Other testimony tending to show that appellant had made this charge of infidelity was given by an itinerant farm hand, who had been discharged by appellant.

We do not intimate that the witness was suborned, but we do announce our opinion that the testimony was not true. The circumstances under which the conversation was reputed to have occurred between appellant and the witness are such as to cause us to discredit it, and, so far from corroborating appellee's testimony, it causes us to give her testimony less credit.

Appellant categorically and emphatically denied making or writing any such statement, and we think it highly improbable that he would have made it to a farm hand. Many witnesses testified as to many conversations with and between these parties, and no one of them ever heard appellant express any doubt as to the paternity of the child.

If he made the statement, it was the highest indignity he could have offered his wife. No greater insult could

be offered a proud and spirited woman than to have her husband tell her he was not the father of her child. But we do not believe he made the statement. He testified that he had never suspected that his wife was unfaithful and that he had never doubted that he was the father of her child.

Appellant and his wife resided in a hotel which he owned in the city of Rogers, which he testified he sold at a sacrifice to remove his wife from the hotel environment, because of her drinking, and by mutual consent he had carried her to Searcy. On the night before leaving for Searcy they agreed upon a separation, but neither apparently regarded the separation as final. They did not discontinue the marital relation. Appellant visited appellee in Searcy on April 22, 1943, and it was during this visit that the child was begotten. Appellee notified appellant of her pregnancy in August, 1943, following, and he took her from Searcy to Little Rock, where extensive and expensive purchases were made in preparation for the baby. This was condonation and no ground for divorce was shown since its occurrence. *Buck* v. *Buck*, 205 Ark. 918, 171 S. W. 2d 939; *McDougal* v. *McDougal*, 205 Ark. 945, 171 S. W. 2d 942.

While a separation was shown, desertion was not proved. Appellant paid the cost of repairs and improvements on a house in Searcy which appellee had inherited from her mother, and she moved into and resided in this house until the suit was filed. Desertion was not then alleged as a ground for divorce, and that allegation was not made until an amended complaint was filed January 16, 1945.

When appellee was carried by appellant to Searcy, he began the construction of a residence on a farm which he owned, and in this home rooms were provided for appellee and her children. Appellant testified that "we talked it over, and she decided that she wanted to come back as soon as we got the property fixed, and it was agreeable to me." But he did not invite her to return, although she expressed her willingness and desire to do so in several letters which she wrote him. If he does not

invite and permit her to return, a cause of action will arise for desertion. But we think no grounds for divorce existed when the decree was rendered from which is this appeal, and that decree will be reversed and the cause vacated. Any cause of action which might have existed when the suit was filed was condoned and none has occurred since, although the right to divorce may be maturing on the ground of desertion.

We see no reason why these parties should not resume their marital relation. We are impressed that they have not lost their respect and affection for each other. But if the reconciliation does not occur, she would have the right upon the remand of the cause to ask alimony for herself, and provisions for the support of the child of which appellant is the father.

The decree will be reversed and all costs will be assessed against appellant.