HARRIS *v.* HARRIS.

4-8249                                        204 S. W. 2d 169

Opinion delivered June 30, 1947.

Rehearing denied September 22, 1947.

*Yingling & Yingling, Claude Duty* and *F. O. Butt,* for appellant.

*Vol T. Lindsey, Harry Neely* and *John W. Nance,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal is from a decree dismissing appellant's complaint of September 24, 1946. The Chancellor found there was no merit in the contentions advanced—a conclusion with which we agree.

The marital history, and matters relating to continuing discord, interrupted now and then by periods of amity, are set out in this Court's opinion of January 7, 1946. *See Harris* v. *Harris,* 209 Ark. 528, 191 S. W. 2d 465. In that case Mrs. Harris took the initiative and procured the decree we reversed.

All of the substantial grounds relied upon in the case now before us were urged in the appeal considered in the January 7th opinion. It was there said: "Any cause of action which might have existed when the suit was filed was condoned, and none has occurred since, although the right to divorce may be maturing on the ground of desertion".

After Mrs. Harris' first complaint was filed August 22, 1944, it was not the husband's duty to urge his presence upon her when the circumstances were such that he knew of her desire for severance of the matrimonial bonds; but, if desertion had begun and the full period had not run when the complaint was filed, good faith on the part of the defendant required that he make known to the plaintiff a willingness to resume the relationship of husband and wife. The opinion of January 7th was to the effect that no valid reason was shown why the parties should not adjust their differences, which were referred to as petty.

February 5, 1946—slightly less than a month following reversal, and eight days after this Court's mandate was issued—appellee wrote his wife the letter set out in the footnote, to which she replied February 9th. Her letter is also copied.[1] Answering the wife's refusal of

---

[1] "Rogers, Ark., Feby. 5, 1946. Dear Helen: The Supreme Court, analyzing our case, arrived at the opinion that we should continue our marital relations, and since they think so I know they must be one hundred percent right. I wrote you many times that as soon as the house was completed I would come there to get you. Now the house, while not completed, is, I am sure, more comfortable than the one you are now living in, and I don't see why we can't make a home out of that empty farm house in the true meaning of the word home. I had little trouble with you in the past that wasn't caused by your drinking liquor, and I am glad to know that you have quit drinking. Write me when you are ready for me to come after you. If you agree with me, as a matter of good faith, write me so I can get things in order for your comfort. Knowing your state of mind in reference to public opinion, may I assure you your returning to live here shall cause you no humiliation, so don't let false pride prevent your decision in my favor. As ever yours, Earl A. Harris."

The reply. "Searcy, Ark., Feby. 9, 1946. Dear Mr. Harris: Your letter of the fifth reached me Thursday. It is true the court some weeks ago expressed the hope that we might be able to adjust our differences, and for a month I have waited some indication on your part that its suggestion had come to your notice. Before receiving your note I had instructed my counsel to proceed, and I suspect their presence and conference at Rogers on the 4th is the explanation of

conciliation, Harris wrote her again on February 14th, urging that she return. He closed with the expression, "I hope you will use *your mind* and reconsider this matter for the sake of our boy. Our consideration of him should be paramount".

We do not find anything to justify Mrs. Harris in thinking that her husband's letter "carried insult in its very content". It is true the communication of February 5th suggested inferentially that Mrs. Harris was acting upon the advice of others instead of consulting her own desires; but this could hardly be called insulting, even if untrue.

With no evidence other than appellant's hypersensitive conclusions that appellee was not acting in good faith, it cannot be said that the Chancellor's action in dismissing the complaint was erroneous.

Affirmed.

---

your leisured message of the 5th. Be that as it may, your apparent reluctance, and warning that the home is still incompleted, only cautions me that this over-two-year-old and oft repeated excuse is still to perform service; when, as you know, many, many months ago I begged you to let us come home and assured you that I could and would make out with it without complaint. Your contemptuous treatment of me and of your baby, and particularly the baby ever since its birth, convinces me that any experiment with you would at best be unsuccessful; could result again in my being encouraged into faults to be regretted, and only create additional problems more important than ourselves. To meet such conditions one must have more than a will to experiment; your past attitude and this present approach, carrying insult in its very content, despite its carefully worded and legalistic form, make it impossible for me ever again to regard you as a wife should regard a husband. The kind hope of the court cannot be realized, however well-intentioned and high-minded its inspiration. Yours truly, Helen."