BUCK *v.* BUCK.

4-7080                                       171 S. W. 2d 939

Opinion delivered May 24, 1943.

*Cleveland Holland* and *David L. Ford,* for appellant.

*Batchelor & Batchelor* and *R. S. Wilson,* for appellee.

HOLT, J. August 21, 1942, appellee sued appellant for divorce. He alleged in his complaint the statutory ground of cruel treatment and indignities. Subdivision 5, § 4381, Pope's Digest. Appellant answered with a general denial. From a decree in favor of appellee comes this appeal.

For reversal appellant says: (1) That appellee was not a resident of this state as contemplated by the statute, and (2) that "the appellee has condoned all the acts of cruelty and indignities of appellant."

After a careful review of the record, we think it practically undisputed that appellee was a *bona fide* resident of this state, within the meaning of the statute (§ 4386, Pope's Digest) at the time he filed his suit, and at the time the decree was rendered. He came to this state on June 20, 1942; his suit was filed August 21 following, and the decree was rendered on November 2, 1942. The suit was filed in the Fort Smith District of

Sebastian county. Immediately after coming to Fort Smith appellee established his residence at 717 North 13th street, secured employment and remained in Arkansas until after the decree was rendered.

We think it clear, therefore, that appellee established his residence within the requirements of the statute. .

In the very recent case of *Brickey* v. *Brickey, ante,* p. 373, 168 S. W. 2d 845, we said: "The ground chiefly relied on for the reversal of the decree here appealed from is that appellee was not a *bona fide* resident of Benton county at the time of its rendition. . . . He testified that he had become a resident of this state, and expected to reside here permanently, a condition which our ninety-day divorce law does not require, it being sufficient under this statute that he was a resident of the state for two months before filing suit for divorce and for one month thereafter before the rendition of the decree. Section 4386, Pope's Digest." See, *Squire* v. *Squire,* 186 Ark. 511, 54 S. W. 2d 281, and *Carlson* v. *Carlson,* 198 Ark. 231, 128 S. W. 2d 242.

Appellant relies upon *McLaughlin* v. *McLaughlin,* 193 Ark. 207, 99 S. W. 2d 571. However, we think that case does not apply here, for the reason that the question there raised was one of venue, and not of residence in this state.

■ On the question of condonation, after a careful review of the record, we have reached the conclusion that the preponderance of the testimony supports appellant's contention, and that the trial court erred in holding otherwise.

Prior to coming to Arkansas appellee resided in Maine, and in August of 1941, he filed suit for divorce against appellant in that state, setting up the same grounds for divorce there, that he alleged in his suit in Arkansas. In April or May, 1941, prior to the institution of his Maine suit, appellee and his wife separated. Appellee continued to contribute to his wife's support thereafter until about the time he came to Arkansas. Following their separation, some time in September,

1941, (the record does not disclose the exact date) the parties resumed their marital relations. It is conceded that they spent at least one evening together, and we think the fair implication from the testimony must be that the marital relationship continued until the Maine divorce suit was dismissed by appellee. We quote here from appellee's testimony: "Q. Now, you mentioned about a divorce suit having been filed in Maine. Was that case tried? A. No, sir. Q. Whatever the facts are about that, state to the court what became of that suit? A. Well—it was, of course, on the grounds of abusive treatment, and, while it was pending I spent an evening with her, in the course of which an act of condonement occurred. That was the only occasion. I conferred with a lawyer up there constantly. Q. This suit was filed for divorce previously. Where was it filed? A. It was filed in Portland. I was a resident of Portland so I filed it there. Q. After that suit was filed, did you have any correspondence with her, or did you get her attitude about the suit? A. After it was filed? Q. Yes, sir. A. Yes. She came to see me; in fact, pursued me until I committed the indiscretion which ended it. The Court: I want to ask him one question. Q. After that dismissal of that suit, did you live together any after that time? A. No, sir. Q. This act of condonation that you spoke of: Did you live together any after that time? A. No, sir."

While the record does not disclose just when appellee dismissed his Maine suit against appellant, it is certain that it was subsequent to their resumption of marital relations. According to the testimony before us, all alleged acts of cruelty and indignities on the part of appellant were committed prior to September, 1941, when the marital relations were resumed, and appellee's act of condonation occurred. No new acts of cruelty on the part of appellant appear, and appellee has failed to show any new acts of cruelty or indignities on the part of appellant after the dismissal of his Maine suit.

This court, in a long line of decisions, has consistently held that one spouse may condone the misconduct of the other, and in the absence of acts of subsequent mis-

conduct, all grounds for divorce prior to condonation by the injured spouse are wiped out.

But for the admitted act of condonation on the part of appellee, we think the great preponderance of the testimony would support a decree in favor of appellee on the ground which he alleged.

Appellee was a graduate of Harvard University and also possessed a Master's degree from Columbia University.

As to what constitutes condonation, as a general proposition, the textwriter in 27 C. J. S., p. 611, § 60, says: "Knowledge of the offense, freedom of consent, and the restoration of marital cohabitation ordinarily are essential to constitute condonation."

The rule is that the right of condonation lies with the innocent spouse, and not with the guilty one. (*McKay* v. *McKay*, 172 Ark. 918, 290 S. W. 951.)

"Sexual intercourse had after the act of cruelty relied on is evidence of condonation, but is not conclusive unless it appears from the circumstances to have been wholly voluntary. There need not be long-continued matrimonial intercourse; a single act may be sufficient." (17 Am. Jur., § 412, p. 350.)

In *Shirey* v. *Shirey*, 87 Ark. 175, 112 S. W. 369, Justice McCulloch, speaking for the court, said: "A voluntary resumption of cohabitation by the innocent spouse, after separation on account of cruel conduct constituting grounds for divorce, operates as a condonation of the cruelty, and there need not be long continued matrimonial intercourse in order to constitute condonation. A single act of sexual intercourse may be sufficient. 14 Cyc., pp. 640, 641; 2 Bishop on Mar. & Div., § 302, *et seq.; Clague* v. *Clague,* 46 Minn. 461, 49 N. W. 198; *Dunn* v. *Dunn,* 26 Neb. 136, 42 N. W. 279."

And in *Price* v. *Price,* 127 Ark. 506, 192 S. W. 893, Justice Hart, speaking for the court, said: "Neither the husband nor the wife can forgive the acts of, and cohabit voluntarily with the other, and at the same time reserve the right to assert them as a means of obtaining a divorce,

if there be no further misconduct, or as a screen to prevent a divorce being obtained on account of subsequent breach of marital duty by the condoning party. *Shirey v. Shirey,* 87 Ark. 175, 112 S. W. 369; *Mathy v. Mathy,* 88 Ark. 56, 113 S. W. 1012; *Womack v. Womack,* 73 Ark. 281, 83 S. W. 937, 1136." See, *Reed v. Reed,* 62 Ark. 611, 37 S. W. 230.

While appellant did not specifically plead condonation as a defense in her answer, in the course of the trial, it developed, from the testimony, that there had been a condonation on the part of appellee, and we think the court should have treated, and did treat, the answer as amended to conform to this proof.

As indicated, we think the preponderance of the testimony supports appellant's contention that these parties resumed their marital relations voluntarily and in good faith; that appellee, by his acts, condoned his wife's misconduct, and that the court erred in awarding him a divorce. Accordingly, the decree is reversed, and the cause remanded with directions to dismiss appellee's complaint for want of equity.