AYERS v. AYERS.

5-958                                                        290 S. W. 2d 24

Opinion delivered May 14, 1956.

*Bethell & Pearce,* for appellant.

*Jack Rose* and *Holland & Holland,* for appellee.

GEORGE ROSE SMITH, J.   This is an appeal by the husband from a decree which denied either spouse a divorce, for the reason that both were at fault, and which allowed the wife alimony of $100 a month in addition to the sum the husband had agreed to pay for the support of his wife and children.   The appellee originally sought a divorce upon the ground of personal indignities.   By

cross-complaint the appellant asked for a divorce on the ground of adultery, and the chancellor remarked in an oral opinion that ''he came pretty close to proving it.'' In fact, the chancellor seems to have been convinced that adultery had occurred, for that was his reason for denying a divorce to the wife.

In our opinion the appellant did prove his charge by a preponderance of the evidence. We will not detail all the testimony indicating that the appellee entered into an adulterous relationship with J. S. Griffin. After some eight years of a not too happy marriage Mrs. Ayers met Griffin, who is a bus driver, during a trip to Florida in 1953. She readily admits that between that meeting and her separation from her husband, in February, 1955, she frequently met Griffin for coffee and talked to him repeatedly by telephone. She attributes to coincidence the fact that she seems to have encountered Griffin in or near Little Rock, Hot Springs, Houston, Omaha, and perhaps other cities. Mrs. Ayers says, for example, that she flew to Houston to see a basketball game, but it happened that Griffin was also there; they had dinner and breakfast together and stayed at the same hotel. There is also evidence that she visited Griffin at his apartment in Fort Smith and may have received him in her home during her husband's absence. The chancellor feared that if he granted the divorce sought by both parties ''Mrs. Ayers will immediately get married to her bus driver friend,'' and the increase in alimony was awarded on the express condition that Mrs. Ayers not see Griffin in the future.

The appellant, it is true, is by no means free from fault. In the course of establishing a successful position in the business world he seems to have devoted very little time to his family. When his suspicions were aroused he had his wife spied on by paid investigators. Perhaps with some provocation he cursed and struck his wife when she asked if she might have Griffin in the home for coffee. On another occasion he lost his temper at a dance and injured his wife's hand slightly. Had the plaintiff's own conduct been guiltless the chancellor

would have been justified in granting her a divorce for indignities.

Thus the question is whether both parties should be denied a divorce when the husband has been guilty of indignities and the wife of adultery. That same situation was presented in *Longinotti* v. *Longinotti*, 169 Ark. 1001, 277 S. W. 41, where the court concluded: "We concur in the finding of the court below that both parties were at fault, but we think appellee [the wife] was the greater and the first offender, and we have concluded, under the case made, that a decree of divorce should be awarded appellant, and it will be so ordered." We think the same course should be followed in the present case, especially as there seems to be no possibility of a reconciliation. Indeed, a psychiatrist whom both parties consulted before their separation was of the opinion that their temperaments would continue to clash. (We do not mean to intimate that the present suit is a collusive one; the record shows clearly that it is not.)

We do not regard condonation as being an issue in the case, although it was mentioned during the court's deliberations. In the course of her testimony the appellee stated that she and her husband had marital relations a day or two before they separated. This issue, however, was not raised by the pleadings, was not explored at the trial, and has not been argued in the briefs. A defense that was apparently waived by the appellee and that was certainly not fully developed should not be made the controlling point in the case.

By their written separation contract the parties agreed that the appellant would pay $300 a month for the support of Mrs. Ayers and the three children. Mrs. Ayers was represented by counsel during the protracted negotiations that preceded the execution of the separation agreement. The evidence does not persuade us that she was overreached in the matter or that there were misrepresentations about her husband's financial condition. The chancellor's award of an additional $100 a

month for alimony, as distinguished from maintenance for the children, was based upon his finding that Ayers was not entitled to a divorce and was conditioned on Mrs. Ayers' not seeing Griffin again. Since we hold that the appellant is entitled to an absolute divorce on account of his wife's misconduct the premise for the trial court's increase in alimony no longer exists, and the appellee should be bound by her agreement. We point out, however, that the agreement is not conclusive with respect to maintenance for the children and may be modified as in other cases. *Lively* v. *Lively*, 222 Ark. 501, 261 S. W. 2d 409.

The appellant's complaint that the trial court allowed an attorney's fee as a condition to the right of appeal is answered by the opinion in *Roberts* v. *Roberts*, ........Ark. ........, ........ S. W. 2d ........, and in this case, as in that one, we do not consider the amount fixed to be excessive.

Reversed.

McFADDIN and WARD, JJ., dissent.

ED. F. McFADDIN, Associate Justice (Dissenting). The majority has reversed the Chancery decree and has awarded Mr. Ayers a divorce on the ground of Mrs. Ayers' misconduct. I dissent from such holding of this Court, because the evidence shows that Mr. Ayers condoned any misconduct on the part of his wife.

Their separation occurred in the fall of 1954; and they were negotiating concerning a property settlement until February 7, 1955. Mrs. Ayers testified that she had lived with her husband after the property settlement was signed on February 7, 1955. Here is her testimony:

"Q. You have lived with him as husband and wife since the date the property settlement was signed?

A. Yes, I have . . .

Q. To refresh your memory, I ask you if the property settlement was signed on the 7th day of February, 1955.

A. That's right.

Q. But you have lived together as husband and wife since the date of that contract?

A. That's right, he did not move that day.''

When Mr. Ayers was asked about this matter of condonation, he testified:

''Q. Mr. Ayers, the testimony has been throughout the trial that the last property settlement that you and your wife executed was on February 7th, 1955. Is that true and correct?

A. Yes, sir.

Q. That's true and correct. I'll ask you on that night did you go to your home, where Mrs. Ayers was— I will ask you, did you all on that night sleep together as man and wife and have sexual relations as man and wife on the night that you signed the property settlement?

A. On the night that we signed the property settlement?

Q. Yes, sir. At 2120 Valley Lane.

A. I don't remember.

Q. Would you say then that you did not or that you did?

THE COURT: He said he didn't remember, Mr. Rose.

A. Jack, I can't truthfully say yes and I can't truthfully say no because I don't remember that night.''

Mr. Ayers knew all about the alleged misconduct and infidelity of his wife at the time of the signing of the property settlement on February 7, 1955; yet he did not deny that they resumed marital relations that night after the property settlement had been signed. I maintain that such testimony makes a clear case of condonation and that Mr. Ayers should not be granted a divorce

since he had condoned the very acts on which the majority of this court is granting him a divorce. The majority opinion says:

"We do not regard condonation as being an issue in the case, although it was mentioned during the court's deliberations. In the course of her testimony the appellee stated that she and her husband had marital relations a day or two before they separated. This issue, however, was not raised by the pleadings, was not explored at the trial, and has not been argued in the briefs. A defense that was apparently waived by the appellee and that was certainly not fully developed should not be made the controlling point in the case."

The Chancellor said that Mr. Ayers had "almost" established Mrs. Ayers' infidelity; yet the Chancellor denied Mr. Ayers a divorce; and it could well have been on this ground of condonation. In the case of *Buck* v. *Buck,* 205 Ark. 918, 171 S. W. 2d 939, we discussed in considerable detail the matter of condonation:

"While appellant did not specifically plead condonation as a defense in her answer, in the course of the trial, it developed, from the testimony, that there had been a condonation on the part of appellee, and we think the court should have treated, and did treat, the answer as amended to conform to this proof. As indicated, we think the preponderance of the testimony supports appellant's contention that these parties resumed their marital relations voluntarily and in good faith; that appellee, by his acts, condoned his wife's misconduct, and that the court erred in awarding him a divorce."

Thus when condonation is shown by the evidence, the pleadings are treated as amended; and apparently the Chancellor so understood. The Chancery Court evidently considered the matter of condonation because the Chancellor denied Mr. Ayers a divorce. On appeal here, Mrs. Ayers was defending the decree granted to her; and so there was no occasion for her to mention condonation in her brief. Certainly the appellant, Mr.

Ayers, was not going to spend a great deal of time calling the Court's attention to his condonation. But the majority is in error in saying that the matter was "waived". Condonation is always an issue, because the State is always a silent third party in every divorce case; and when parties have cohabited, with knowledge of infidelity, the State is entitled to have them remain as husband and wife. (See 27 C. J. S. 703 "Divorce", § 114.) On this point of condonation, I respectfully dissent from the majority holding in the case at bar.