BRIGHAM *v.* BRIGHAM.

5-1741                                          319 S. W. 2d 844

Opinion delivered January 19, 1959.

*J. Harrod Berry,* for appellant.

*Williams & Gardner,* for appellee.

PAUL WARD, Associate Justice.  By this appeal Alma Good Brigham challenges a decree of divorce granted to her husband, Earl Jesse Brigham.

Since the parties were married in New Orleans, April 2, 1942, while Earl was in the Navy, they have apparently had marital difficulties on numerous occasions. For a large part of the intervening years they did not live together because appellee was serving in the Navy, having re-enlisted some 2 or 3 times.  Appellee's home had always (at least up to 1954) been in Pope County where his parents also resided.

After appellee's first discharge from the Navy he returned to his home, with his wife, in Pope County and served two terms as Circuit Clerk of that County for the years 1947 to 1950 inclusive.  Having been defeated for a third term in 1950 he soon thereafter re-enlisted in the Navy and served for about 18 months.  After a few months he again re-enlisted and served until the early part of 1954.  During all of these periods of service appellee served away from his home, traveling to various parts of the world.  Shortly after appellee's last discharge from the Navy he and his wife went to Benton in Saline County where they lived together and together they established a real estate agency.  Although the agency appeared to be moderately successful financially, after some 7 or 8 months appellee once more re-enlisted in the Navy, about the first of January, 1955, and has remained in service up until the present time.

On January 13, 1956 appellee filed a complaint and later an amended complaint in which he alleged two grounds for a divorce.  One: Indignities, in that appellant treated him with studied contempt amounting to severe mental cruelty, consisting of quarrelling, abuse, *etc.*  Two: Desertion, in that appellant refused to live with him.  Appellant denied all the above allegations and prayed for attorney fees, and costs.  No children are involved and apparently there are no property rights to be settled.

The trial court found that appellee was entitled to a divorce on both alleged grounds, and gave appellant her costs and attorney fees.

Much of the testimony is conflicting and irrelevant, but a careful examination of the same forces us to the conclusion that it does not sustain the decree of divorce.

*One. As to indignities.* There is in the record some testimony by appellee, weakly supported, that appellant was disagreeable and quarrelsome while they lived together prior to 1954. However we deem it unnecessary to recount this testimony because we think any such alleged indignities were condoned by appellee by living with his wife for some 7 or 8 months at Benton. This court has held to this effect many times. In *Buck* v. *Buck,* 205 Ark. 918 (at pages 921 and 922), 171 S. W. 2d 939, we said:

"This court, in a long line of decisions, has consistently held that one spouse may condone the misconduct of the other and in the absence of acts of subsequent misconduct, all grounds for divorce prior to condonation by the injured spouse are wiped out."

Appellee attempts to avoid the application of the above rule by stating he agreed to live with his wife at Benton only on the condition she would "stop demanding that I move to Little Rock and that she make me a dutiful and loyal wife". He must fail in this attempt, however, because there is no evidence she later violated that condition.

There is no evidence of personal indignities on the part of appellant after appellee last entered the Navy, nor could there well be, because they have not lived together since that time.

*Two. Desertion.* This ground is based solely on the contention by appellee that appellant refused to live with him. All acts supporting this contention must likewise rest on what occurred after the last enlistment in the Navy which, as stated before, was about the first of the year 1955. A careful search of the record fails to support appellee's contention.

When appellee left for the Navy the last time, he did so, according to the uncontradicted testimony, without the knowledge of his wife and also without winding up his business affairs or making any arrangements with reference to his wife or household furniture. Upon appellee's last enlistment he went or was sent to a station in California. He remained there about 10 months when he was transferred to Alaska. Appellee states that soon after he landed in California he requested his wife to join him and she refused. Appellant says that while she was willing and anxious to join him there, yet it was impractical if not impossible for her to do so at that time, for several reasons. She had the responsibility she says, of winding up their business affairs in Benton, she had the household goods to store or dispose of, and appellee had made no definite plans for her to travel to California or a place to live after she got there. She says she was very nervous and asked appellee to come back and drive through with her but he refused to do so. The uncontradicted testimony is that appellant did not even know when appellee left California for Alaska, and that she had to make several calls to find out. Appellee says he asked his wife to join him in Alaska, but the uncontradicted testimony is that he made no arrangement for her to make the trip. Appellant says she understood that it would have been necessary for travel arrangements to be made through the Navy or the Government, but none were ever made.

Since appellee's suit for divorce was, in this connection, based on desertion and not on 3 years separation, the vital issue is not whether parties lived separate and apart for little over a year. Certainly it is not uncommon to find such extended separations where the husband is away on military service with no suspicion of desertion, especially on the part of the wife. The real issue here is whether appellant willfully and without good cause refused to live with her husband. It is on this issue that we find no convincing evidence. Moreover, viewing the evidence most favorably to appellee, his cause must fail on the vital issue because there is no corroborating evidence to support it. In *Sutherland*

v. *Sutherland,* 188 Ark. 955, 68 S. W. 2d 1022, this court said: "It is the established doctrine of this State that a divorce decree will not be granted upon the uncorroborated testimony of one of the parties." See also *Highsmith* v. *Highsmith,* 219 Ark. 123, 240 S. W. 2d 5.

Much of appellant's testimony and argument challenges the trial court's finding that appellee's residence was in Pope County for the purpose of maintaining this suit. In view of our conclusions heretofore expressed we deem it unnecessary to go into this question at length. There is, we think, sufficient evidence to support the trial court on this issue. As this court has stated on previous occasions, every person is entitled to have a residence somewhere. It is undisputed in this case that appellee's residence has been in Pope County all his life, except for the few months he lived at Benton. We do not think that one incident is decisive here. Residence, in a case of this kind, is largely a matter of intent, and a person has a right to change it when he pleases. See *McGill* v. *Miller,* 183 Ark. 585, 37 S. W. 2d 689. Appellee's testimony is to the effect that he went to Benton and lived with his wife conditionally, hence he may not have intended to abandon Pope County as his residence. The record also shows that while there he voted in Pope County. Therefore we cannot say that the Chancellor's finding, under all the facts and circumstances of this case, is against the weight of the evidence.

Appellant, who is receiving an allotment from the Government, has asked only for an additional attorney fee incident to this appeal, to which we think she is entitled.

In accordance with the above the decree of the trial court is reversed, and the cause is remanded with directions to dismiss appellee's petition and to allow appellant an additional attorney fee of $100 for this appeal.

Reversed with directions.