Margie Elaine ROCCONI *v.* James Richard ROCCONI

CA 03-1464                                          196 S.W.3d 499

Court of Appeals of Arkansas
Opinion delivered October 27, 2004

*Wynne & Wynne*, by: *Tom Wynne, III*, for appellant.

*James M. Pratt, Jr.*, for appellee.

OLLY NEAL, Judge. Appellant Margie Rocconi appeals from a June 5, 2003 order of the Ouachita County Circuit Court granting appellee James Rocconi a divorce. On appeal, she contends that the trial court erred in ruling that appellee had proved he was entitled to a divorce on the grounds of personal indignities. She also contends that, in light of appellee's admitted adultery, the doctrine of recrimination barred appellee from obtaining a decree of divorce.

The parties were married on December 23, 1993, and there were no children born of the marriage. Despite separating on June 17, 2002, the parties continued to share the marital residence until August 2002. On June 19, 2002, appellant filed a complaint seeking separate maintenance. Appellee answered with a counterclaim for divorce on the grounds of personal indignities. Appellant filed a motion to dismiss the counterclaim for divorce on November 22, 2002. She alleged that within the past five years, appellee had committed adultery and that he was, therefore, barred from obtaining a divorce. Appellee denied the adultery allegation.

At the hearing, appellant testified that she was fifty-one years old. She said that, from 1994 to 2002, their marriage was "wonderful." She testified that in November 2001, appellee moved out of the marital bedroom because he thought his snoring was bothering her. Despite their separate sleeping arrangements, appellant said that up until August 2002, they continued to have an intimate relationship. She stated that at some point between November 2001 and February 2002, appellee stopped spending time with her. Appellant said that appellee would spend every weekend at their property in Chidester.

In July 2001, appellant began going to the casinos in Shreveport. She said that she won $25,000 her first weekend and that the third time she went she won $37,500. Appellant testified that she did not go to the casinos on a regular basis. She said that between July 2001 and August 2002, she only went to the casinos twenty-five times. Appellant estimated that she had won about $235,000 and lost about $16,000. She said that appellee never voiced any concern about the amount of time she spent at the casinos, and that one time he had taken her winnings and had refused to tell her how he had spent them. Appellant testified that appellee kicked her out of the marital home in May 2002, when she refused to sign a deed transferring certain marital property to appellee's son. She stated that she stayed two days with her sister and that when she returned appellee had changed all the locks. She said that eventually

appellee gave her a new key and that from May 2002 to August 2002, they lived at opposite ends of the marital home. Appellant also said that she never used household money or money from appellee's veterinary clinic to gamble. However, she admitted charging $10,000 on one of their joint credit cards to pay off her Discover Card debt.

Appellant testified that appellee was living with Teresa King. She also testified that, following the August 12, 2002, temporary hearing, someone left pictures of appellee and a woman other than King outside her apartment. Appellant said that she gave the pictures to appellee.

John Thomas Wilson, appellant's son, testified that he lived with the parties up until their separation. He said during the marriage, appellant had several illnesses and that, when appellee came home from work, appellant was usually in bed. Wilson testified that appellant went to the casinos every other weekend.

Jo Ann England, appellant's sister, testified that appellee had called her several times and had tried to convince her that appellant had "problems." She said that a couple of times he suggested that appellant had a gambling problem.

Terry Harcrow testified that he had known appellant for seventeen years. He said that sometime in early 2002, appellant informed him that she had won around $225,000 at the casino and that she had hidden "somewhere between $151,000 and $161,000" from appellee.

Appellee testified that appellant began gambling in 2001 and that, by early 2002, he began to suspect that her gambling was out of hand. Appellee also testified that he did not have a problem with appellant gambling every now and then but when she started going to the casinos every weekend, he thought there was a problem. Appellee said that he learned the full magnitude of appellant's gambling when they had their 2001 taxes prepared. He said that at that time he learned that, instead of the $60,000 that appellant said she had won, appellant's actual winnings for 2001 were $231,000. Appellee said that during a fishing trip, he learned that appellant had "maxed out" his clinic credit card. He stated that he did not approve the $10,000 credit-card transfer to pay appellant's Discover Card debt. Appellee could not recall ever voicing to appellant his concerns about her gambling. However, he later testified

that he told appellant she needed help. He said that appellant's gambling had an effect on their marriage in that appellant was never home, she stopped accompanying him to church, stopped cooking, and stopped accompanying him to meetings and banquets. He also said that appellant would go three to five days without putting on her "street clothes." During his testimony, appellee indicated that the parties' marriage could not be saved.

Appellee testified that his relationship with Teresa King began in August 2002. He denied any involvement prior to August.

Cindy Mouse, appellee's daughter, testified that appellant was going to the casinos as often as every weekend and that appellant had stopped attending family functions. She described appellee as being unhappy. She stated that the parties would often quarrel about the amount of time appellant was spending at the casinos.

Appellee's son, James Phillip Rocconi, testified that, because appellant was either gone or locked in her room, the parties spent little time together. He said that appellant first started going to the casinos once a month and that she eventually started going three times a month. He said that the reason he knew this was because, each time appellant would go to the casino, appellee would call him. He testified that when appellee would call, he would change his plans so that he could spend time with him. He described appellee as being miserable and lonely.

Teresa King testified that she and appellee became friends in August 2002. She denied having a romantic relationship with appellee prior to August 2002.

Based on this evidence, the trial court found that appellant's gambling, prior to the parties' separation, was excessive and was the primary cause of their separation. The trial court also found that appellant's gambling constituted personal indignities and that, because of appellant's gambling, appellee was entitled to an absolute divorce. The trial court denied appellant's claim for separate maintenance and also denied appellant's motion to dismiss.

Our standard of review in this case is *de novo*. *Rutherford v. Rutherford*, 81 Ark. App. 122, 98 S.W.3d 842 (2003). On appeal, we do not reverse the lower court's findings unless they are clearly erroneous. *Banks v. Evans*, 347 Ark. 383, 64 S.W.3d 746 (2002). A finding is clearly erroneous when, although there is evidence to

support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

In her first argument on appeal, appellant contends that the trial court erred in ruling that appellee had proved he was entitled to a divorce on the grounds of personal indignities. Divorce is a creature of statute and can only be granted upon proof of a statutory ground. *Poore v. Poore*, 76 Ark. App. 99, 61 S.W.3d 912 (2001). In the case at bar, the action for divorce was based on personal indignities. In order to obtain a divorce on that ground, the plaintiff must show a habitual, continuous, permanent, and plain manifestation of settled hate, alienation, and estrangement on the part of one spouse, sufficient to render the condition of the other intolerable. *Id.* Personal indignities have been defined as rudeness, unmerited reproach, contempt, studied neglect, open insult and other plain manifestations of settled hate, alienation and estrangement, so habitually, continuously and permanently pursed as to create an intolerable condition. *See Copeland v. Copeland*, 2 Ark. App. 55, 616 S.W.2d 773 (1981). It is well settled that the testimony of the plaintiff as to the ground for divorce is not sufficient and that same must be corroborated by other testimony. *See id.*

It is clear that appellant engaged in a habitual conduct that had alienated her husband and made his living situation intolerable. Therefore, we cannot say that the trial court erred when it found that appellant's gambling caused the demise of the parties' marriage and that the gambling constituted personal indignities such that appellee was entitled to a divorce.

Appellant also contends that, in light of appellee's "admitted adultery," the doctrine of recrimination barred appellee from obtaining a decree of divorce. The doctrine of recrimination provides that when the conduct of both parties has been such as to furnish grounds for divorce, neither of the parties is entitled to relief. *Narisi v. Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959). The doctrine of recrimination applies only when both parties are equally at fault. *Lewis v. Lewis*, 248 Ark. 621, 453 S.W.2d 22 (1970); *Posey v. Posey*, 268 Ark. 894, 597 S.W.2d 834 (Ark. App. 1980).

■■ While we recognize that pursuant to *Milne v. Milne*, 266 Ark. 900, 587 S.W.2d 229 (Ark. App. 1979)[1], appellant committed adultery, it is the province of the trial court to determine which party's conduct was more egregious. However, when one party's conduct is more egregious than the other's conduct, it is proper to grant a divorce to the party whose conduct is the lesser of the two. *See Ayers v. Ayers*, 226 Ark. 394, 290 S.W.2d 24 (1956); *Longinotti v. Longinotti*, 169 Ark. 1001, 277 S.W. 41 (1925); *Posey v. Posey, supra.* Quite often, the party whose conduct is more egregious is also the first offender. *See Ayers v. Ayers, supra*; *Longinotti v. Longinotti, supra.* Here, appellant was the first offender, and it was proper for the trial court to find her conduct to be more egregious than that of appellee's. *See Ayers v. Ayers, supra*; *Longinotti v. Longinotti, supra.*

Affirmed.

GRIFFEN and ROAF, JJ., agree.

[1] In *Milne*, we defined adultery as including sexual intercourse by a married person with a person who is not his or her spouse, regardless of whether the person accused is living with his spouse.