

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-58

| | | |
|---|---|---|
| LARRY COOPER | | **Opinion Delivered** December 18, 2013 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION |
| V. | | [NO. DR-2011-4346] |
| | | HONORABLE VANN SMITH, JUDGE |
| ANNETTE COOPER | | |
| | APPELLEE | AFFIRMED |

**JOHN MAUZY PITTMAN, Judge**

In this divorce case, Larry Cooper appeals from the Pulaski County Circuit Court's entry of two qualified domestic relations orders (QDRO) dividing his railroad-retirement benefits with his wife, appellee Annette Cooper. We affirm.

The parties were married in 1963 and separated in September 2011, when appellee filed for divorce. At the time of the divorce, the parties owned a marital home in Sherwood that was unencumbered and valued at $275,000. Appellee accepted appellant's offer at trial to buy her interest in the home for $130,000. The parties also owned three Scottrade accounts valued at $869,000. Before the temporary hearing, they had an account containing $135,000 and a $100,043 certificate of deposit at Regions Bank; both parties made withdrawals from Regions before trial. They also owned vehicles, a credit-union account, and life-insurance policies. During the marriage, appellant worked at Union Pacific Railroad and Missouri-Kansas-Texas Railroad. He retired before the divorce and began receiving



retirement benefits from both (administered by Union Pacific and distributed in one payment each month).

The circuit court entered a divorce decree on May 30, 2012, granting appellee a divorce. It accepted the parties' agreement concerning the marital home; ordered the Scottrade accounts to be divided equally; ordered appellant to pay appellee $10,135.50 to equalize the parties' withdrawals from Regions Bank; awarded the $300 in the credit-union account to appellee (with appellant's consent); equalized the values of the vehicles it awarded to the parties by directing appellee to pay appellant $7,000; ruled that each party would retain ownership of his or her life-insurance policy; distributed the remaining items of personal property; and directed appellant to pay alimony to appellee in the amount of $1,000 per month for twelve months.

The circuit court addressed the retirement accounts as follows:

26. <u>Retirement accounts</u>. Both parties are retired. [Appellant] was an employee of Union Pacific Railroad and receives a pension from Union Pacific Railroad as well as one from the Missouri-Kansas-Texas Railroad.

27. The Court orders that the parties divide, pursuant to *Hisquierdo v. Hisquierdo*, 439 U.S. 573, 99 S.Ct. 802 (1979), the Defendant's Tier 2 benefits. The [Appellant] worked at Union Pacific and Missouri-Kansas-Texas Railroad during the parties' marriage and these benefits should be divided between the parties based on the number of years worked at the railroad and the number years of marriage. It is the court's understanding that all of [appellant's] employment with the railroad occurred during the parties' marriage.

Appellee filed a motion for reconsideration or to amend the final decree on June 15, 2012. She asked the court to direct appellant to pay her for her share in the marital home



and the Regions account within thirty days and to divide the Union Pacific pension equally

and/or to increase alimony.[1]

---

[1] Appellee stated:

6. *Prior* to the Divorce Decree [appellee] was receiving **$1,374.00 per month in Tier 1 benefits** and **$543.41 per month from her Tier 2 benefits** for a **total of $1,917.41 per month.** [Appellant] was receiving **$2,257.00 per month in Tier 1 benefits** and **$1,250.62 per month in Tier 2 benefits.** *In addition*, [appellant] receives a pension from Union Pacific in the amount of **$2,059.41 per month.** [Appellant's] monthly income **totaled approximately $5,567.03 per month.**

7. *After* the Divorce Decree was entered the [appellant's] Tier 1 benefits were **reduced to approximately $315.00 per month** and **she lost** *all* **of** *her* **Tier 2 benefits.** [Appellant], on the other hand, **kept all of his Tier 1 benefits totaling $2,257.00** and the Court ordered that [Appellant's] Tier 2 benefits be divided evenly, which **equals an amount of $625.31 per person per month.** The Court acknowledged [appellant] was receiving a pension from the Union Pacific railroad and the parties testified at trial that 100% of the pension was earned during the marriage. However, the Court did not address the pension further or provide an award of [appellee's] interest in [appellant's] pension, meaning that [appellant] **kept all of his pension benefits totaling $2,059.41 per month.**

8. Under this Order [appellee's] income is reduced to **$315.00** (the remainder of her Tier 1 benefits) plus **$625.31** (half of [appellant's] Tier 2 benefits) for a **total of approximately $940.31 per month.** [Appellant's] income remains at **$2,257.00** (the total amount of his Tier 1 benefits) plus **$625.31** (half of [appellant's] Tier 2 benefits) *plus* **$2,059.41** (the undivided amount of his Union Pacific pension) for a **total of approximately $4,941.72 per month.**

9. Based on [appellee's] approximate income of $940.31 per month and [appellant's] approximate income of $4,941.72 per month, the Court has awarded [appellant] a monthly income that is over 5 times what [appellee] is receiving per month. Additionally, the Court only awarded alimony in the amount $1,000.00 per month for a limited 12 months with the burden to prove that she requires additional alimony at the expiration of the 12 months.

10. As noted by the Court, the parties were married for 48 years and [appellee] suffers from COPD, emphysema and osteoporosis. This amount of monthly income that has currently been awarded will not be sufficient for [appellee] to continue and


The circuit court granted the motion for reconsideration on July 16, 2012. It directed appellant to pay appellee $140,135.50 within thirty days and stated that appellee had correctly pointed out that it had failed to divide appellant's Union Pacific pension. The court also stated: "The Court orders that this pension be divided equally between the parties and that any documents necessary to effectuate the division of this asset be prepared by [appellee's] attorney with cooperation from [appellant] and his attorney. In all other respects, the Divorce Decree shall be affirmed."

On September 26, 2012, using the language provided by Union Pacific, the court entered two QDROs (for Union Pacific and for Missouri-Kansas-Texas) that stated that appellee was the "alternate payee." It also provided that following the alternate payee's death, any payments that otherwise would be made to the alternate payee if the alternate payee had survived would be made to Tim Cooper (the parties' adult child). On October 5, 2012, appellant filed a motion for reconsideration of the QDROs, asserting that they were

---

maintain her current lifestyle in her current condition, *especially* after the termination of alimony when [appellee] will return to only receiving an income of $940.31 per month compared to the $4,941.72 per month that [appellant] will continue to receive.

11. Moreover, as there is no dispute that the pension is vested and was earned during the course of the marriage, it is appropriate that the Union Pacific pension be divided equally between the parties. *See Skelton v. Skelton*, 339 Ark. 227, 231 (Ark. 1999) (finding that Arkansas follows the well-established rule that retirement benefits earned during marriage are considered marital property subject to division. *See Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1986); *Meinholz v. Meinholz*, 283 Ark. 509, 678 S.W.2d 348 (1984)).

SLIP OPINION

not qualified under the Employee Retirement Income Security Act (ERISA) because of the inclusion of a third party, Tim Cooper. He asserted that Tim was not an "alternate payee" within the statute's meaning.

Appellant filed a second motion for reconsideration of the QDRO on the Missouri-Kansas-Texas Railroad pension on October 12, 2012. He stated:

> 6. That no Court Order exist [sic] which Divides [appellant's] interest in the Missouri-Kansas-Texas Pension Plan to support entry of a Qualified Domestic Relations Order giving [appellee] any portion of those proceeds.
>
> 7. [Appellant] moves this Court to Reconsider the Qualified Domestic Relations Order issued in this case dividing an asset of [appellant's] which was not divided in the parties Decree or in it's [sic] Order for Reconsideration filed July 16, 2012.
>
> 8. That without a provision for its division, the Qualified Domestic Relations Order pertaining to the Missouri-Kansas-Texas Pension Plan should be withdrawn and vacated.

On November 5, 2012, the trial court denied appellant's motions for reconsideration, stating:

> 8. The Supreme Court case, *Boggs v. Boggs*, 520 U.S. 833 (1997) [cited by appellant], is inapplicable to the matter at issue here. In *Boggs*, the Court was addressing whether or not benefits of a non-participant spouse could be passed by testamentary devise. There was no QDRO at issue in *Boggs*; therefore, the Court did not rule on the issue of an inclusion of a third-party as an alternate payee in a QDRO.
>
> 9. However, the Court in *Boggs* did discuss QDROs in dicta. In the opinion, the Court defines a QDRO as "a limited exception to the pension plan anti-alienation provision and allows courts to recognize a nonparticipant spouse's community property interest in pension plans under specific circumstances." *Id*. at 839. The Court also recognizes that QDROs "are exempt from both the pension plan anti-alienation provision . . . and ERISA's general preemption clause." *Id*. at 846. This Court's reading of the *Boggs* opinion does not support the proposition that [appellee] would be unable to pass her interest in the pension plans to a third-party of her choosing.

SLIP OPINION

10. [Appellant] also relies on a case decided by the state appellate court in California, *In re Marriage of Shelstead*, 66. Cal. App. 4th 893 (1998). While the court in *Shelstead* invalidated a devise to a third-party that was made in a QDRO, the court made the following statement: "We stress the narrowness of our decision. Our holding concerns only the order before us today. We do not decide . . . that any testamentary devise contained in a QDRO is invalid." *Id.* at 904–905.

11. Most significantly, the decision in *Shelstead* is in no way binding on this Court, and the California court's interpretation of ERISA is not a primary source of law which must be followed by this Court.

In this order, the circuit court also denied appellant's second motion for reconsideration of the QDRO concerning the Missouri-Kansas-Texas Railroad. It rejected appellant's claim that it had not previously ordered the division of that pension, stating:

14. However, as stated above, the Decree, entered on May 30, 2012, specifically stated that [appellant] receives a pension from Union Pacific and from Missouri-Kansas-Texas and that those benefits were to be divided equally among the parties. While it is correct that the Missouri-Kansas-Texas Railroad pension is not specifically named in the Order of Reconsideration, filed on July 16, 2012, the Order of Reconsideration stated that, "[i]n all other respects, the Divorce Decree shall be affirmed."

15. Further, it is the understanding of this Court that both pension plans were earned during the marriage and that [appellant] receives the payments from both pensions in a single payment. Based on these facts, it is unreasonable that the pensions would be divided differently.

16. Therefore, this Court has previously ordered the division of the Missouri-Kansas-Texas pension plan, and as such, the QDRO related to that plan was proper, and [appellant's] Motion is denied.

Appellant then pursued this appeal.

We review traditional equity cases on both factual and legal questions de novo on the record, but will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Allen v. Allen*, 99 Ark. App. 292, 259 S.W.3d 480 (2007). We do not defer to the trial

SLIP OPINION

court's determinations of law. *Id*. When the issues on appeal do not involve factual questions but rather the application of a legal doctrine, we determine whether the appellee was entitled to judgment as a matter of law. *Spears v. ReconTrust Co., N.A.*, 2013 Ark. App. 272.

Appellant argues in his first point that Tim's designation as the recipient of appellee's benefits if she predeceases appellant prevents the QDROs from being in compliance with ERISA's requirements. ERISA is a comprehensive federal statutory scheme designed to protect the interests of employees and their beneficiaries in employee benefit plans. *Boggs v. Boggs*, 520 U.S. 833, 845 (1997). It contains a preemption clause providing that its provisions preempt any state law relating to an employee-benefit plan. 29 U.S.C. § 1144(a) (2006). ERISA also contains an anti-alienation or spendthrift provision, stating, "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (2006). Congress included the spendthrift provision to protect employees and their dependents from the participant's financial improvidence and to ensure benefits were available upon retirement. *See Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 376 (1990).

Soon after ERISA's enactment, courts struggled with whether the transfer of pension benefits incident to a divorce was a prohibited assignment or alienation. To address this issue, Congress amended ERISA in the Retirement Equity Act of 1984 (REA). *Ablamis v. Roper*, 937 F.2d 1450 (9th Cir. 1991). Congress sought to protect the rights of nonemployee spouses and dependents by allowing state courts to make equitable divisions of property in

7



a divorce or dissolution and provision for support of dependents. *Id.* It did not permit all interspousal transfers of pension benefits upon divorce, however. It declared that the transfers of pension benefits between spouses in a divorce context were prohibited alienations within the meaning of the anti-alienation provision, but set forth a limited exception to the rule if the order is determined to be a QDRO. 29 U.S.C. § 1056(d)(3)(A). Thus, a court may divide spousal rights in pension benefits through the mechanism of a QDRO and award the nonemployee spouse her appropriate share of those benefits if the domestic-relations order is a "qualified" one as defined in the REA. Consistent with this language, Congress added an exception to the preemption provision, stating that it would not apply to QDROs. 29 U.S.C. § 1144(b)(7).

A QDRO is any judgment, decree, or order made pursuant to a state domestic-relations law that (1) "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan," and (2) "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant." 29 U.S.C. § 1056(d)(3)(B). "Alternate payee" is defined as "any spouse, former spouse, child, or other dependent of a participant." 29 U.S.C. § 1056(d)(3)(K).

Appellant contends that Tim is not an "alternate payee" because he is an adult child and is no longer dependent upon appellant. He states that ERISA does not define "child"; therefore, the IRS definition, which "clearly defines child as under the age of 19 or under



the age of 24 if they're a full-time student," applies. He adds: "It is clear from the wording of the statute that only dependents of the participant would be considered alternate payee and therefore be eligible to receive any benefit from the plan." Other than referring to his counsel's argument at the October 31, 2012 hearing, appellant cites no authority for these assertions. We will not consider an argument on appeal that has no citation to authority or convincing legal argument, nor will we research or develop an argument for an appellant. *ReconTrust*, *supra*.

It is true that Congress did not intend to classify state court orders effecting testamentary transfers as QDROs. In *Boggs*, *supra*, the United States Supreme Court held that ERISA preempts state law permitting a predeceasing nonemployee spouse to transfer undistributed pension benefits by testamentary instrument. 520 U.S. at 842–54. Unlike the case before this court, however, *Boggs* did not concern a domestic-relations order. We agree with the trial court's conclusion that the California Court of Appeals's decision in *Shelstead v. Shelstead*, 78 Cal. Rptr. 2d 365 (Cal. Ct. App. 1998), is not on point because the domestic-relations order in that case simply gave the non-employee spouse the right to name a "successor in interest." *Id*. at 366. In the absence of any authority to support appellant's argument, we affirm on this point.

In his second point, appellant contends that the QDRO for the Missouri-Kansas-Texas Railroad was an impermissible modification of the divorce decree because it was entered more than ninety days after the divorce decree and because Arkansas Code Annotated section 9-12-315 (Repl. 2009) does not authorize a division of marital property



after the divorce decree has been entered, in the absence of fraud or other grounds for relief from the original judgment. We disagree.

Arkansas Rule of Civil Procedure 60(a) provides that a court may modify or vacate a judgment, order, or decree within ninety days of its filing "[t]o correct errors or mistakes or to prevent the miscarriage of justice." Under subsection (b), it may correct clerical mistakes at any time. Subsection (c) authorizes the setting aside of a judgment after ninety days for circumstances not applicable here.

The trial court's entry of a QDRO past the ninety-day deadline found in Rule 60(a) was not an improper modification of the decree in this case. Trial courts have an inherent power to enter orders correcting their judgments where necessary to make them speak the truth and reflect actions accurately. *Harrison v. Bradford*, 9 Ark. App. 156, 655 S.W.2d 466 (1983). However, this power is confined to correction of the record to make it conform to the action that was actually taken at the time, and does not permit a decree or order to be modified to provide for action that the court, in retrospect, should have taken but which, in fact, did not take. *Jones v. Jones*, 26 Ark. App. 1, 759 S.W.2d 42 (1988).

In this case, the trial court ruled that in the divorce decree, it had attempted to make an equal division of all of appellant's retirement benefits. It is clear to us that the QDRO did not alter the decree but, instead, interpreted it and clarified the meaning of the provision dividing appellant's retirement benefits. Entering an order to interpret the decree and to enforce its terms falls squarely within the trial court's authority to make the record speak the



truth. *Hapney v. Hapney*, 37 Ark. App. 100, 824 S.W.2d 408 (1992); *Ford v. Ford*, 30 Ark. App. 147, 783 S.W.2d 879 (1990). Accordingly, we reject this argument.

Affirmed.

HARRISON and WYNNE, JJ., agree.

*Wallace, Martin, Duke & Russell, PLLC*, by: *Dale B. Duke*, for appellant.

No response.