Cite as 2020 Ark. App. 521

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-19-895

| | |
|---|---|
| NANCY JAN NEIDHARDT<br>APPELLANT<br><br>V.<br><br>LEWIS TAYLOR NEIDHARDT<br>APPELLEE | Opinion Delivered: November 18, 2020<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT<br>[NO. 12DR-19-73]<br><br>HONORABLE DON MCSPADDEN, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Nancy Jan Neidhardt appeals the Cleburne County Circuit Court's finding of cruel and barbarous treatment as grounds for divorce, and she challenges the court's unequal distribution of marital property. Nancy also claims that she was denied due process by the court's decision to limit the parties' time to present evidence. We affirm.

### I. *Relevant Facts*

On April 2, 2019, Nancy Jan Neidhardt filed for divorce from Lewis Taylor Neidhardt after seven years of marriage. Lewis counterclaimed for divorce citing cruel and barbarous treatment as the grounds. In pertinent part, Lewis, who was diagnosed with terminal lung cancer, asserted that Nancy interfered with his ability to take his medication and have access to his supplemental oxygen. Lewis requested an unequal division of marital

assets, explaining that he was under financial strain due to his illness and that Nancy is a respiratory therapist earning a substantially higher income.

On July 19, the court held a hearing on the divorce complaint and countercomplaint. There was some confusion at the beginning of the hearing because the hearing had been set for one hour rather than two or four hours. Nancy asked for a continuance, which the court denied. Eventually, the court determined that each party was allotted one hour to present evidence. The court granted Nancy's request to dismiss her complaint for divorce, and the hearing proceeded on Lewis's counterclaim for divorce.

The relevant testimony is as follows. Lewis's daughter, Whitney Waggoner, testified that on March 26, Lewis contacted her through Facebook, asking her to "get me out of here now." When she and other family members arrived at the house, Nancy answered the door and "didn't want us to come in," but eventually they were able to go to Lewis, who was in a back room. Lewis asked to be taken out of the home to get away from "the drama." Nancy called the police alleging that Whitney and her brother were trying to kidnap Lewis. The police arrived, and Whitney testified that Nancy told the police that "he was not in his right mind and that he had a brain tumor[.]" After a brief discussion, it was decided that Lewis would stay in the home, and Nancy would leave. Nancy left in Lewis's van, which Lewis had recently purchased to get to his medical appointments, locking the doors to the home as she left. In addition to key locks, Nancy had installed keypad-entry locks, and she had recently changed the access code. Lewis's medication, oxygen, wallet, phone, keys, and other personal belongings were locked inside. Lewis was dependent on medication and supplemental oxygen and had been in and out of the hospital with a collapsed lung. Whitney

and her brother were forced to duplicate Lewis's medications and did so within the next day and a half. Nancy's son, Zach, helped them arrange to pick up Lewis's medication, phone, wallet, and some other personal belongings.

Nancy contended that Lewis had not proved cruel and barbarous treatment as the grounds for divorce, and after a discussion regarding how to phrase the question, the court asked Whitney, "[W]hat have you observed as far as the actions between your father and his wife that may have caused you some concern, period? Do you have an objection to that?" Whitney responded that Nancy was manipulative and controlling, she took her father's phone from him, locked him out of the house without his medication and oxygen, subjected Lewis to needless drama at the end of his life, and isolated him from his family.

Lewis testified that Nancy prevented him from communicating with his friends and family and that he "felt cutoff." Lewis testified that the day he left the home he told Nancy he wanted to leave, and she called the police to try to force him to stay. He stated that being locked out of his house and away from his belongings, wallet, medication, and oxygen caused him "apprehension and fear[.]" Lewis testified that the spare key was not in the box, and he did not know the access code because Nancy had changed it. Lewis explained that Nancy had taken excellent care of him during his illness but that he still wanted a divorce.

Regarding the property issues, Lewis testified that Nancy's sons sold his camper about a week before the separation and that he had not been given the money for it. He testified that he bought the van about a month before the separation to make it easier to get to his medical appointments but that Nancy took the van when she left and had not made payments on it. The van was in his name. Lewis also testified that since the separation,

Nancy had kept the rental income from the "Argenta" house that he owned prior to the marriage. Lewis had added Nancy's name to the title at some point during the relationship.

Lewis testified that since he had been married to Nancy, they withdrew money from the account to pay for a vacation, the camper, and the house in Heber Springs. Lewis also explained that there were scheduled $1000 monthly withdrawals from the account, but the withdrawals stopped six weeks prior to trial because there was no money left in the account, and to withdraw further would reduce the principle. Lewis testified that he received $1600 each month in Social Security to pay bills. Lewis stated that he had more houses than he needed. He asked the court to give the Heber Springs house to Nancy and allow him to keep the Argenta house. He also declined reimbursement for the rent she had collected since their separation. Lewis requested that the court change the beneficiary of his life insurance policy from Nancy to his children. Lewis explained that he removed Nancy and her children from the 401(k) as beneficiaries after he had been served with the divorce complaint and that he was unable to change the beneficiaries of his life insurance policies until he was divorced.

Nancy testified that she is a respiratory therapist earning $25.50 an hour, and as a PRN, she earns approximately $22 an hour. She stated that when she locked the door, she did not know that Lewis did not have his supplemental oxygen. Nancy denied that her son had to intervene to get Lewis his medication, and she claimed that she sent Whitney texts "begging her to come pick his medicine up." Nancy stated that she was aware of Lewis's fragile health and that she filed for divorce to protect marital assets from Lewis's children and to force him to communicate with her. Nancy testified that she and her son

4

administered Lewis's medical treatment and that she was responsible for cooking, cleaning, and helping Lewis bathe. Nancy denied that she took Lewis's phone from him.

Nancy testified that on March 26, after they decided that she would leave the home and Lewis would stay, she was gone twenty minutes and that she was unaware that Lewis needed back into the house to get his medication. She stated that she had changed the entry code because she wanted to keep Whitney from entering the house when she was not home, and she claimed that Lewis "knew of the lock change." Nancy disagreed with Lewis's statement that the spare key was missing. Nancy stated that it took her son "a couple days," but he brought Lewis's medication and oxygen to him. Nancy denied that anyone had requested that she get the medication and oxygen to him. Instead, she claimed that the day after he left, she sent texts and emails to Whitney to come pick it up.

The court entered the divorce decree, finding that Lewis proved by a preponderance of the evidence the grounds alleged in the counterclaim, and he was entitled to a divorce. The court divided the property and ordered that Nancy could walk through the marital home to retrieve her personal items, and Lewis was to retain his fishing gear, WWII memorabilia, and other personal items. Lewis was awarded the Argenta home that he possessed before the marriage, and Nancy was ordered to quitclaim any interest she had in the house to Lewis. The circuit court ordered the marital home in Heber Springs to be sold and any equity or debt to be divided equally. The court ordered the parties to sell the van and divide any remaining debt. The circuit court awarded Nancy her vehicle and found that she was solely responsible for the remaining debt on it. Each party was responsible for any debt in his or her name. Lewis was awarded possession and control of his life insurance

policies, and the court awarded Lewis his 401(k) that he possessed prior to the marriage. The circuit court ordered that the amount in Nancy's retirement account that had accrued from the date of marriage would be divided equally. Nancy was ordered to pay $1000 in attorney's fees and costs.

The court acknowledged that it divided the marital assets unequally and based its distribution on "the length of the marriage, the assets brought into the marriage by the parties, the age of the Defendant (70 years), Defendant's failing health and inability to work in the future, versus the Plaintiff's age, good health, and many years ahead of her to work." This appeal followed.

II. *Discussion*

A. Grounds

We conduct a de novo review in appeals from decrees of divorce. *Rocconi v. Rocconi*, 88 Ark. App. 175, 196 S.W.3d 499 (2004). Under our standard of review, this court will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

Lewis counterclaimed for divorce on the ground of "cruel and barbarous treatment." To prevail on this ground, Lewis had to prove that Nancy was guilty of such cruel and barbarous treatment as to endanger his life. Ark. Code Ann. § 9-12-301 (b)(3)(B) (Repl. 2015). Divorce is a creature of statute and can be granted only when statutory grounds have been proved and corroborated. *Mayland v. Mayland*, 2019 Ark. App. 390, 586 S.W.3d 179.

Evidence of the grounds for divorce must be corroborated, but the evidence of corroboration need only be slight when a divorce case is sharply contested, and it is not necessary that the testimony of the complaining spouse be corroborated on every element or essential fact. *Coker v. Coker*, 2012 Ark. 383, 423 S.W.3d 599. This court gives due regard to the circuit court's superior position in judging the credibility of witnesses. *Moore v. Davidson*, 85 Ark. App. 104, 145 S.W.3d 833 (2004). Testimony by the plaintiff and corroborating witnesses that is merely general or conclusory in nature is not sufficient. *Mayland*, *supra*.

On appeal, Nancy contends the circuit court erred in finding that Lewis proved and corroborated the ground for divorce. We disagree. There was testimony that Nancy intentionally changed the access code, removed the spare key, and then left the home. Nancy testified that she was Lewis's caregiver and that she knew of his fragile state of health and his need for oxygen and medication. Nancy stated that Lewis had twice suffered from a collapsed lung and required supplemental oxygen. Nancy explained that it was the next day before she tried to get Lewis's medication to him, though she returned to their home only twenty minutes after she had locked him out. Lewis's daughter testified that he was without his medication for a full day, the oxygen is quickly depleted, and what he had with him the day he was locked out of the marital home was insufficient for his needs. Whitney testified that Nancy's son eventually helped get Lewis's medication and oxygen but only after a full day had elapsed. The witness testimony offered at the trial was not conclusory in nature, specifically supporting Lewis's claim of cruel and barbarous treatment.

Given the lenient standard for proving and corroborating grounds for divorce when the divorce is sharply contested, and affording due deference to the circuit court's ability to judge the credibility of the witnesses, we are not left with a firm conviction that the circuit court erred in finding that the testimony supported the Lewis's claim of cruel and barbarous treatment. Lewis's claim of cruel and barbarous treatment—that his life was in danger because of Nancy's actions—is supported and corroborated by the witnesses' testimony, and we affirm.

## B. Property Settlement

Nancy asserts on appeal that the circuit court failed to state a basis for dividing the property unequally and that the unequal distribution is "against the weight of the evidence." Specifically, Nancy asserts that the court improperly relied on the testimony regarding Nancy's behavior the day Lewis left their home as the basis of the unequal distribution. Nancy also argues that Lewis admitted he had only a short time to live; thus, an unequal distribution of property is not supported by the evidence, and the court impermissibly "ordered a distribution of the marital assets to the benefit of Lewis's children[.]" Her arguments are not well taken.

Arkansas law provides that a circuit court should divide marital property equally unless the circuit court finds that equal division is inequitable. Ark. Code Ann. § 9-12-315(a)(1)(A). There is a presumption that an equal division of marital property is fair and equitable. *Davis v. Davis*, 2016 Ark. App. 210, 489 S.W.3d 195. If inequitable, the court is to divide the property equitably taking into consideration nine statutory factors enumerated at Arkansas Code Annotated section 9-12-315(a)(1)(A): (i) the length of the marriage; (ii)

8

age, health, and station in life of the parties; (iii) occupation of the parties; (iv) amount and sources of income; (v) vocational skills; (vi) employability; (vii) estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (viii) contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and (ix) the federal income tax consequences of the court's division of property. When an unequal division of marital property is awarded, the court must state its basis and reasoning for not dividing the marital property equally between the parties, and the basis and reason should be stated in the order. Ark. Code Ann. § 9-12-315(a)(1)(B).

In the order, the circuit court acknowledged the unequal distribution of property and stated that it considered the length of the marriage (seven years), Lewis's age (seventy), and his failing health and inability to work as opposed to Nancy's age (fifty-one), good health, and many years of work ahead of her. Contrary to Nancy's assertion, the court did not base the unequal distribution of property on her conduct on the day Lewis left. Instead, the court based its decision on the statutory factors (i), (ii), (iii), (iv), and (vi).

Nancy's argument that the court erroneously divided the marital assets to benefit Lewis's children also provides no basis for reversal. There is no indication that the circuit court considered the division of Lewis's estate after his death in its distribution of property, and Nancy cites no case law that supports her argument. We have consistently held that we will not consider an argument on appeal that has no citation to authority or convincing legal argument, nor will we research or develop an argument for appellant. *Cooper v. Cooper*, 2013 Ark. App. 748, 431 S.W.3d 349. As we stated above, the circuit court made the required

acknowledgement of its unequal distribution of the property, and it properly based the decision on the factors enumerated in the statute.

## C. Due Process

Nancy argues that the circuit court's one-hour time constraint denied her due-process right to a meaningful opportunity for a hearing when a property interest is at stake. Nancy claims that "both parties stated that the hearing on this matter would take longer than an hour and the Court would not grant additional time." This is not true. The court permitted each party fifty-five minutes to present his or her case, allowing two hours for the hearing. Nancy's due-process argument is based on a significant factual error. Moreover, Nancy does not discuss the evidence or testimony that she would have presented if she had more time; thus, she does not explain how the two-hour time constraint violated her due-process right to a meaningful hearing. Accordingly, we affirm.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellant.

*Danny R. Crabtree*, for appellee.